UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**J. PHILIP LAWROSKI,**

      **Plaintiff,**

                              **Case No. 2:11-cv-1074**
  **v.**                            **JUDGE EDMUND A. SARGUS, JR.**
                              **Magistrate Judge Elizabeth Preston Deavers**

**NATIONWIDE MUTUAL INSURANCE
COMPANY, et al.,**

      **Defendants.**

## OPINION AND ORDER

Philip J. Lawroski filed this age discrimination case against Defendants Nationwide

Mutual Insurance Company and Nationwide's Vice President of Finance and Chief Financial

Officer of Property & Casualty Operations Lynda Butler. This matter is before the Court on

Defendants' Motion for Summary Judgment (ECF No. 33) and Plaintiff's Motion for Leave to

File Surreply *Instanter* (ECF No. 36). For the reasons that follow, the Court **GRANTS** both

motions.

I.

Unless otherwise noted, the following facts are uncontroverted and are viewed in the light

most favorable to Plaintiff, drawing all justifiable inferences in his favor. *See Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citations omitted).

Defendant Nationwide Mutual Insurance Company is a mutual insurance company

headquartered in Columbus, Ohio. Nationwide and its subsidiaries offer property and casualty

insurance, health insurance products, life and retirement savings products, and asset management

products to individuals and businesses. Generally, Nationwide's Property and Casualty ("P&C")

division insures homes and automobiles, while its life, health, and retirement products are considered part of the company's Financial Services division. Nationwide has separate finance departments organized to support its P&C businesses and its Financial Services businesses.

The P&C and Financial Services organizations each have their own Chief Financial Officer ("CFO"), who reports to the CFO of the entire enterprise. Additional business unit CFOs report to the CFOs for P&C businesses and for Financial Services businesses and are organized to support the distribution channels and/or product lines for Nationwide's services (e.g., via independent insurance agents or exclusive agents).

On October 31, 1994, Nationwide hired Plaintiff as a manager in the Finance Projects Department that supported Nationwide's Enterprise CFO. Plaintiff held that position until 1999, when he was promoted to the corporate life actuarial group in the Financial Services division. In 2003, financial constraints led to a downsizing and Plaintiff's position was eliminated. Pursuant to company policy, Plaintiff was provided sixty (60) days to find another position within Nationwide. Plaintiff secured a position as an Agency Business Consultant within the 60-day period.

The following year, Plaintiff took a position in Cleveland, Ohio with Nationwide's Titan Insurance business unit, which provides a high risk automobile insurance product. In March 2007, Plaintiff was promoted to a Financial Business Director in the Titan group. Plaintiff held that position until the end of 2008, when economic factors forced Titan to reorganize its staff and Plaintiff to consider other opportunities within Nationwide.

Two managers in Columbus, Wendell Crosser and David Braun, contacted Plaintiff with an opportunity to move back to Columbus and work as a Financial Business Director on projects

2

for the P&C Finance Organization's Exclusive Channel, the Independent Agent Channel, and the High-Risk Auto Channel. Plaintiff explained that, "between all those channels, there w[ould] be plenty of work." (Pl. Dep. at 82, ECF No. 27.) Plaintiff accepted this position, which provided work from all three of the named channels; however, Plaintiff reported to Braun in the Exclusive Channel organization.

In April 2009, Nationwide made organizational changes to the P&C Finance departments. At that time, Defendant Butler replaced Braun and assumed the title Vice President of Finance and CFO of Nationwide Insurance P&C operations. Also as part of these changes, a team reporting to Peter Rothermel became part of Butler's department and Christopher Lane joined the department with responsibility for overseeing what had been two separate teams of regional finance support professionals that previously reported directly to Butler. In 2010, Butler's direct reports were Rothermel, Lane, Mark Dielman, and Plaintiff.

In Plaintiff's 2010 mid-year review, Butler noted her struggle finding projects for Plaintiff, and by August 2010, she determined that there was insufficient work for Plaintiff to justify the cost of the position in her budget. At that time, she informed Plaintiff that his position was going to be eliminated in 2011. Plaintiff testified that after Butler first spoke with him about the elimination of his position, she indicated that she was going to "be able to work something out" and that she was considering "expanding his role." (Pl. Dep. at 257.) Butler communicated with her peers about Plaintiff's availability for any projects on which they may be able to utilize his services. Plaintiff was not approached by these individuals with any additional work or assignments. Defendants submit that they therefore eliminated Plaintiff's position because the workload did not justify his position, and its elimination would achieve cost savings. Plaintiff

3

was given a sixty-day period to attempt to secure another job within Nationwide.

Plaintiff applied for an opening listed as a Financial Business Director position on Rothermel's team. Defendants submit evidence showing that the position was previously held by Dan Dolsky, who was terminated for poor performance in the Spring of 2010. At the time Dolsky was terminated, the position was titled "Senior Consultant," which is the same position as a Financial Business Director except that the latter position also supervises at least one other individual. Plaintiff takes issue with Defendants' evidence, and argues that the work that was performed in this position was not Dolsky's previous work but was instead the work that was taken from him when his position was eliminated.

Plaintiff, Stephanie Elliot, Michael Ligas, Jon Reidler, and Hal Richer were all interviewed for the position. Plaintiff was 55 years old at the time, and all other applicants were all under 40. The interviewers were Butler, Rothermel, and another manager Lee Sheeran. Each interviewer scored the applicants from 1 to 5 in a number of categories (*e.g.*, professional presentation, technical proficiency, cross-departmental leadership potential, communication skills) and these scores were tallied to rank the applicants. (ECF No. 33-2, Ex. A.) The applicants scored as follows: 155 for Ligas, 129 for Richer, 127 for Elliot, 117 for Reidler, and 105 for Plaintiff. Ligas was ranked first by every interviewer. Plaintiff was placed neither first nor second by any interviewer. Rothermel was the hiring manager responsible for the final hiring decision, while Butler was required to approve or disapprove his choice. Rothermel chose to offer the position to Ligas, who was 34 years old at the time. Butler approved Rothermel's decision.

Plaintiff was unable to secure a new position within Nationwide and was terminated on

4

April 16, 2011.  On December 1, 2011, Plaintiff filed this action under the Age Discrimination in

Employment Act ("ADEA"), 29 U.S.C. § 623(a) and the Ohio Revised Code Chapter 4112,

alleging that Defendants terminated him and failed to award him the Financial Business Director

position on Rothermel's team because of his age.

## II.

In Defendants' reply brief they argue that a failure to hire claim and a disparate impact

claim, both of which Plaintiff refers to in his memorandum in opposition, are not appropriately

before this Court.  Plaintiff moves to file a surreply *instanter* to address arguments related to

Defendants' arguments.  For good cause shown, the Court **GRANTS** Plaintiff's motion and will

consider the content of the surreply.  *See* S. D. Ohio Civ. R. 7.2(a)(2).

## III.

Defendant moves for summary judgment on all Plaintiff's claims.

### A. Standard

Summary judgment is appropriate "if the movant shows that there is no genuine issue as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a).  The Court may therefore grant a motion for summary judgment if the nonmoving party

who has the burden of proof at trial fails to make a showing sufficient to establish the existence

of an element that is essential to that party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986)).  A genuine issue of material fact exists if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986) (the requirement that a dispute be "genuine" means that there must be more than "some

metaphysical doubt as to the material facts"). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby, 477 U.S.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970))

## B. Disparate Treatment

Plaintiff contends that he has alleged claims for termination and for failure to hire in violation of the ADEA and Ohio's analogous civil rights statute. The analysis of a claim under the ADEA applies equally to a claim under the Ohio Revised Code. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 357 (6th Cir. 1998); *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 177–78 (2004). The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1).

A plaintiff may establish a violation of the ADEA by either direct or circumstantial evidence. *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008). Regardless of the type of evidence proffered, the burden of persuasion remains on ADEA plaintiffs to show "that age was the 'but-for' cause of their employer's adverse action." *Gross v. FBL Financial Services, Inc.*, 129 S.Ct. 2343, 2351 n. 4 (2009). *See also Geiger v. Tower Automotive*, 579 F.3d 614, 620 (6th Cir. 2009); *Davis v. Goodwill Indus.*, No. 23238, 2009 Ohio 6133, 2009 Ohio App. LEXIS 5147 (Ohio Ct. App. Nov. 20, 2009). Plaintiff in this action relies on indirect evidence, utilizing the familiar *McDonnell Douglas* burden shifting evidentiary framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973); *Ercegovitch v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998) (applying burden-shifting analysis to

6

age discrimination claim based on indirect evidence). Indirect evidence does not on its face establish discriminatory animus, but allows the factfinder to draw the reasonable inference that discrimination occurred. *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997).

Under the *McDonnell Douglas* paradigm, it is a plaintiff's burden to establish a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. *Id.* "Once the defendant meets this burden, 'the plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation'" as pretextual. *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410–1 (6th Cir. 2008) (citation omitted).

Defendants move for summary judgment on Plaintiff's age discrimination claims, arguing that Plaintiff has failed to establish a *prima facie* case of age discrimination, and that even if he had done so, Defendants have set forth a legitimate nondiscriminatory reason for the adverse employment actions that Plaintiff cannot show to be pretextual. Defendants additionally contend that they are entitled to summary judgment on Plaintiff's state law discrimination claim because he filed this case outside of the limitation period applicable to his elected remedy under Ohio law and on his ADEA claim against Defendant Butler because there is no individual liability under that statute.

### 1. *Prima Facie* Case

"[T]o establish a *prima facie* case of discrimination by the defendant, 'the plaintiff must show (1) that he is a member of a protected group, (2) that he was subject to an adverse employment decision, (3) that he was qualified for the position, and (4) that he was replaced by a

person outside of the protected class . . . . the fourth element may also be satisfied by showing

that similarly situated non-protected employees were treated more favorably.'" *Clayton v.*

*Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002) (alteration in original) (quoting *Talley v. Bravo*

*Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995)). If the adverse action is a termination that

arises as part of a work force reduction, as Defendants in this case contend, a plaintiff must

provide "additional direct, circumstantial, or statistical evidence tending to indicate that the

employer singled out the plaintiff for discharge for impermissible reasons." *Barnes v. GenCorp*,

896 F.2d 1457, 1465 (6th Cir. 1990).

> "A work force reduction situation occurs when business considerations cause an
> employer to eliminate one or more positions within the company. An employee is
> not eliminated as part of a work force reduction when he or she is replaced after his
> or her discharge." A person is considered replaced "only when another employee is
> hired or reassigned to perform the plaintiff's duties." A person is not considered
> replaced when his duties are absorbed by another person "or when the work is
> redistributed among other existing employees already performing related work."

*Geiger v. Tower Auto.*, 579 F.3d 614, 623 (6th Cir. 2009) (quoting *Barnes*, 896 F.2d at 1465).

Plaintiff disagrees with Defendants' assessment of his termination, asserting that his

termination was not part of a reduction in force ("RIF"), but instead his duties were reassigned to

Ligas whom Defendants hired to replace Plaintiff. Therefore, Plaintiff contends, he need not

provide the additional evidence required in a RIF situation. However, Plaintiff maintains that,

even if this Court were to consider this a RIF case, he has met his burden of establishing the

fourth element of his *prima facia* case of termination and of failure to hire.

In response, Defendants assert that Plaintiff cannot establish the fourth element of his

*prima facie* case whether or not the Court considers Plaintiff's termination is appropriately

categorized as a RIF. As to Plaintiff's failure to hire claim, Defendants first posit that Plaintiff

8

failed to sufficiently raise such a claim in his Equal Employment Opportunity Commission charge and in his complaint in the instant action. Defendants further argue that, even if he had raised a failure to hire claim, Plaintiff has failed to establish the fourth element of his *prima facie* case of age discrimination as to that claim as well.

The Court finds it unnecessary to determine whether Plaintiff sufficiently alleged a failure to hire claim or whether he has established a *prima facie* case for that claim or for his termination claim. This is because, assuming *arguendo* that Plaintiff appropriately alleged a failure to hire claim and that he met his *prima facie* burden for both that claim and his termination claim, Defendants would still be entitled to summary judgment on both claims. Defendants have articulated legitimate, nondiscriminatory reasons for terminating Plaintiff and for refusing to hire Plaintiff in the position awarded to Ligas, which no reasonable jury could find are a pretext for age discrimination.

### 2. Legitimate Nondiscriminatory Reasons and Pretext

Defendants state that they terminated Plaintiff because there was a lack of work and elimination of his position would achieve cost savings to Butler's organization. Defendants contend that they did not hire Plaintiff as a Financial Business Director on Rothermel's team because he was ranked the lowest of the five applicants that applied for the position and because Rothermel had negative impression of Plaintiff's abilities from a prior experience working with him. These are legitimate, nondiscriminatory reasons. The Sixth Circuit has emphasized, that "the defendant need not *prove* a nondiscriminatory reason for" the adverse employment action taken against the plaintiff, "but need merely *articulate* a valid rationale." *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996) (citing *Mary's Honor Center v. Hicks*, 509 U.S. 502, 514 (1993))

9

(emphases in original).   Thus, it is now Plaintiff's burden to show that these reasons were

pretext for age discrimination.

"Under the law of our circuit, a plaintiff can show pretext in three interrelated ways: (1)

that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually

motivate the employer's action, or (3) that they were insufficient to motivate the employer's

action." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (citing *Hedrick v. W.*

*Reserve Care Sys.*, 355 F.3d 444, 460 (6th Cir. 2004)).   "To carry h[is] burden in opposing

summary judgment, [Plaintiff] must produce sufficient evidence from which a jury could

reasonably reject [Defendants'] explanation of why [they] fired h[im]." *Id.* (citing *Mickey v.*

*Zeidler Tool and Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008); *Braithwaite v. Timken Co.*, 258

F.3d 488, 493-94 (6th Cir. 2001)).   The parties address each of these three categories, sometimes

pigeonholing evidence where the fit is less than comfortable.   The Court, however, follows the

analysis of the parties, but keeps in mind that in a pretext inquiry, "it is important to avoid

formalism . . . , lest one lose the forest for the trees." *Id.* at 400, n.4.   The Sixth Circuit has

explained:

> Pretext is a commonsense inquiry: did the employer fire the employee for the stated
> reason or not? This requires a court to ask whether the plaintiff has produced
> evidence that casts doubt on the employer's explanation, and, if so, how strong it is.
> One can distill the inquiry into a number of component parts, and it can be useful to
> do so.  But that should not cause one to lose sight of the fact that at bottom the
> question is always whether the employer made up its stated reason to conceal
> intentional discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515
> (1993) ("[A] reason cannot be proved to be 'a pretext for discrimination' unless it is
> shown both that the reason was false, and that discrimination was the real reason.");
> *Forrester*, 453 F.3d at 417 ("If [the proffered reason] is not the true ground, the
> employer may still be innocent of discrimination; he may for example have lied to
> conceal a reason that was discreditable but not discriminatory.") (citations omitted).

At the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation. If so, her *prima facie* case is sufficient to support an inference of discrimination at trial. *Hicks*, 509 U.S. at 511. But summary judgment is proper if, based on the evidence presented, a jury could not reasonably doubt the employer's explanation. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) ("[A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.").

*Id.* (parallel citations omitted) (alterations in original).

With this direction in mind, the Court turns to the parties' arguments.

### a. Basis in fact

The Sixth Circuit explains that the first type of rebuttal, that a defendant's reasons have no basis in fact, "consists of evidence that the reasons given by the employer simply did not happen." *Gray v. Toshiba Am. Consumer Prods.*, 263 F.3d 595, 600 (6th Cir. 2001) (citing *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) *overruled in non-relevant part by Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000)). Plaintiff does not argue that any of the reasons Defendants gave for hiring Ligas instead of him are factually false and argues only that the reasons Defendant gave for his termination are untrue. Specifically, Plaintiff asserts that there was not a lack of work for him to do, as Defendants claim, but instead Defendants gave that work to Ligas, who was allegedly hired by Defendants to fill a vacancy on Rothermel's team left by Dolsky.

To support this assertion, Plaintiff submits that "[t]here is evidence that Dolsky's duties were not transferred to Ligas, but were assigned to three other employees[,]" *i.e.*, Karen Turner, Stephanie Elliott, and Rothermel. Plaintiff further contends that Ligas could not have take over

11

Dolsky's work because Ligas worked on modeling projects and Plaintiff has submitted evidence that Dolsky did not perform any modeling work. Plaintiff concludes that, "[t]his evidence establishes that Defendants' contention that Ligas took over Dolsky's duties is factually false under the first *Manzer* showing." (Pl. Mem. in Opp. Def. Mot. Summ. J. at 19; ECF No. 34.) This Court, however, disagrees.

Plaintiff is correct that the uncontroverted evidence shows that Turner, Elliott, and Rothermel took over Dolsky's duties after his termination. It is, however, a faulty conclusion to determine that this fact precludes Dolsky's work from being given to Ligas. There is nothing inconsistent about Dolsky's work being performed temporarily by Turner, Elliot, and Rothermel until someone was hired to replace Dolsky.

With regard to Plaintiff's argument related to the modeling projects, he submits evidence that in late 2009, early 2010, he performed work on a project meant to streamline and improve work being done in Butler's organization. As part of that work, Plaintiff reviewed the tasks of certain positions, including Dolsky's. Plaintiff found that Dolsky did not perform any modeling project work in his position. Plaintiff believes that this evidence shows that Ligas could not have taken over Dolsky's work because it is undisputed that Ligas engages in modeling project work. Plaintiff's assessment of the evidence, however, is incomplete.

That is, there is also evidence in the record of the Performance Improvement Plan given to Dolsky on March 26, 2010, which clearly indicates that he was responsible for modeling work, and that he was not performing that work as required. The Performance Improvement Plan provides that despite "continued coaching in [the DE model learning and re-build,] D[olsky] has not dedicated adequate time to understand" it and "[i]n spite of continued encouragement to get

12

started on the work, D[olsky] has not begun to process to re-build the DE financial model."
(Rothermel Dep., Ex.38, ECF No. 31 at 194.)  Thus, the evidence that Plaintiff submits is not
inconsistent with the inclusion of modeling work in Dolsky's job responsibilities.  The evidence
shows that although Dolsky was responsible for modeling work, he was simply not performing it
during the time period Plaintiff reviewed his work.  The evidence does not show, nor provide a
basis for any reasonable inference to be drawn, that Defendants' explanations of why it
terminated Plaintiff and why it hired Ligas in Dolsky's position were false.

### b. Insufficient to motivate

The Court now considers whether Defendants' reasons for not hiring and/or terminating
Plaintiff were insufficient to motivate Defendants' actions.  This third type of rebuttal, like the
first type, is a "direct attack[] on the credibility of the employer's proffered motivation for firing
the plaintiff" or refusing to hire him.  *Manzer*, 29 F.3d at 1084.  To show that a defendant's
reasons for subjecting an employee to an adverse action were insufficient to motivate its action, a
plaintiff, "ordinarily," offers "evidence that other employees, particularly employees not in the
protected class, were not fired even though they engaged in substantially identical conduct to that
which the employer contends motivated its discharge of the plaintiff."  *Id.*

Plaintiff contends that Ligas is a similarly situated individual who is not in a protected
age category and he was treated more favorably than Plaintiff was treated by being awarded the
Financial Business Director position.  However, the mere fact that Ligas was chosen over
Plaintiff, standing alone, is insufficient to rebut Defendants' proffered nondiscriminatory reasons
for failing to hire Plaintiff.  *See Burks v. Yellow Transp., Inc.*, 258 F. A'ppx 867, 877 (6th Cir.
2008) ("The mere fact that these individuals were promoted instead of Burks does not, standing

13

alone, present sufficient evidence to rebut Yellow Transportation's proffered nondiscriminatory reasons for failing to hire Burks."). It is uncontroverted that Plaintiff scored the lowest of the five individuals who interviewed for the position. And, Plaintiff makes no argument, nor is there evidence to support any inference, that interviewers Rothermel and/or Sheeran harbored animus toward Plaintiff because of his age. Neither does Plaintiff argue, nor is there evidence to support an inference, that either Rothermel and/or Sheeran were influenced by Butler's alleged age animus. *See Arendale v. City of Memphis*, 519 F.3d 587, 604 n. 13 (6th Cir. 2008) ("When an adverse hiring decision is made by a supervisor who lacks impermissible bias, but that supervisor was influenced by another individual who was motivated by such bias, this Court has held that the employer may be held liable under a 'rubber-stamp' or 'cat's paw' theory of liability.") (citations omitted).

Moreover, Plaintiff and Ligas are not similarly situated with respect to their qualifications as was recorded by the three interviewers or with respect to Plaintiff's performance evaluation by Rothermel. That is, Rothermel had only worked with Plaintiff on one project, and had a negative impression of his ability to work with others based on that experience. On the other hand, Rothermel's prior work with Ligas left a positive impression. (Pl. Dep. Ex. V, ECF No. 27 at 396; Ligas Evaluation) (Ligas "collaborates effectively with multiple individuals . . . is consistently positive and eager . . . has earned the respect of may in Finance and beyond . . . has demonstrated his skills in leading collaborative analysis"). Any "employee[] to whom the plaintiff seeks to compare himself must 'have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employers treatment of them for it.'" *Clayton*, 281 F.3d at 611 (quoting *Mitchell*, 964 F.2d at 583). Thus,

14

no inference of discrimination can be made from a comparison of Ligas and Plaintiff here. *See Burks*, 258 F. App'x at 877 ("However, to create an inference of discrimination using this evidence, Burks must also show that the white casuals Yellow Transportation promoted also had similar performance and attitude problems."); *Brennan v. Tractor Supply Co.*, 237 F. App'x 9, 21-22 (6th Cir. 2007) (explaining that the plaintiff failed to demonstrate pretext in an age discrimination case where plaintiff came forward with no evidence to show that younger employees who were promoted had "the same or equivalent history of performance and attitude deficiencies as he did").

Finally, Plaintiff submits evidence that he received an overall rating of "achieves" on his 2009 and 2010 performance evaluations and argues that this evidence "raises a genuine issue of material fact [] regarding his suitability for the Financial Business Director position" and also "contradicts" Butler and Rothermel's affidavits regarding Rothermel's negative prior experience with Plaintiff. However, simply because Plaintiff received a positive overall rating by Butler does nothing to cast doubt on Rothermel's impression of Plaintiff's work. Further, absent evidence of improper motive, Defendants' decision to rate Plaintiff as it did is not the affair of this Court. The Sixth Circuit cautions "is not the prerogative of the courts to engage in the post-hoc management of the 'employer's internal affairs by second-guessing'" its business decisions. Gulley v. County of Oakland, 496 F. App'x 603, 608 (6th Cir. 2012) (citations omitted). "The ADEA was [simply] not intended as a vehicle for judicial review of business decisions." *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 70 (6th Cir. 1982) (internal quotation marks omitted). A plaintiff "must provide evidence not that [the defendant-employer] could have made a business decision that others might think more fair, but that [the

15

defendant-employer] made the decision to terminate him because of his membership in a protected class." *Norbuta v. Loctite Corp.*, 1 F. App'x 305, 314-15 (6th Cir. 2001) (reduction in force case); *see also Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004) ("As we have oft times repeated, 'it is inappropriate for the judiciary to substitute its judgment for that of management.'") (quoting *Smith v. Leggett Wire Co.*, 220 F.3d 752, 763 (6th Cir. 2000)).

Thus, even when believing Plaintiff's evidence and making all justifiable inferences in his favor, no jury could reasonably doubt Defendants' reasons for terminating him and for not awarding him the position in Rothermel's group.

### c. Actual motivation

The Sixth Circuit has explained that the second showing of pretext, that a defendant's proffered reasons did not actually motivate its action, "is of an entirely different ilk" than the first two showings. *Manzer*, 29 F.3d at 1084. In this analysis, a "plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct *could* motivate" the adverse employment action. *Id.* (emphasis in original). "The plaintiff's attack on the credibility of the proffered explanation is, instead, an indirect one. In such cases, the plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant." *Id.* (emphasis in original). "In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Id.*

Plaintiff here contends that his age was more likely the motivation for Defendants' termination of him and their failure to hire him than the explanations Defendants gave, *i.e.*, that

16

Plaintiff's job was eliminated as part of a reduction in force and that Ligas was more qualified for the Financial Business Director position on Rothermel's team. Plaintiff relies upon a combination of the following evidence to support his assertion: he was the oldest applicant who applied for the position that was awarded to Ligas, comments made by Defendant Butler, the cost of Plaintiff's benefits, Defendants' transfer of Plaintiff's work to Ligas, Ligas' promotion to the position on Rothermel's team before he completed the Financial Leadership Rotation Program ("FLRB"), Ligas' failure to meet the minimum requirements of the position, evidence of a trend showing that Butler was attempting to assemble a younger workforce, and the fact that four Financial Business Director positions remained in Butler's organization after he was terminated.

Initially, the Court finds that Plaintiff's assessment of some of the evidence is inaccurate. That is, the cost of Plaintiff's benefits allocated to Butler's budget had nothing to do with his age or years of service, since it is calculated from salary, and benefits for all employees are charged at the same flat percentage of salary. Plus, Ligas was hired at the same pay band salary as Plaintiff was receiving, thereby costing Butler the same amount of her budget. Further, Plaintiff simply made a mistake in adding the Ligas' years of experience. Although Defendants set forth evidence that the experience requested for the position on Rothermel's team was merely a guideline, as opposed to a requirement, Ligas' resume reflects that he met the suggested experience, which was ten years accounting, finance, insurance or administrative business functions, and five years management level experience. And, the evidence shows that Ligas participated in and completed in accordance with the program's guidelines the FLRP rotation before he began his position in Rothermel's group. (Rothermel Dep., Ex. 13; ECF No. 31 at 122.) Finally, the evidence before the Court does not reflect that Plaintiff's work was transferred

to Ligas.

In this regard, it is undisputed that Plaintiff was hired as shared resource between the P&C Finance Organization's Exclusive Channel, the Independent Agent Channel, and the High-Risk Auto Channel. (Pl. Dep. at 82.) It is also undisputed that no individual was hired into a shared resource position – indeed, that the position no longer exists in Butler's organization. Further, there is no evidence showing that the Independent Agent Channel and/or the High Risk Auto Channel provided any work to be completed by the Financial Business Director position filled by Ligas.

Plaintiff, however, argues that one of the main modeling projects given to Ligas, the Lifetime Value modeling, was Plaintiff's work. But when pressed to explain this assertion, Plaintiff testified that the Lifetime Value modeling was never his project, but had always been done by Rothermel's group:

> Q. But that [Lifetime Value modeling] was always work that Pete [Rothermel] and his group did separate from you; is that right?
>
> A. He did work separate from me, yes.
>
> Q. And he did this modeling work separate from you, right?
>
> A. The long-term value -- lifetime value, yes.

(Pl. Dep. at 204; ECF No. 27 at 204.)

The work to which Plaintiff refers as "his" is work that he believed would become available as Rothermel's group expanded the Lifetime Value model:

> Q. Okay. If we look at lifetime value model on Michael Ligas' list, that is something that had always been a part of Pete Rothermel's group, right?
>
> A. Yes. They were building that.

Q. Okay. So that is not something that was your work, is it?

A. No. But to extend it to be used for acquisitions and scenario testing and all that *would have been*, yes. I don't think it did any of that. They were working on a build-out of that *to be able to do that someday*.

. . . .

Q. So if I understand what you're saying, you're saying that the acquisition modeling work became a part of the lifetime value model; is that right?

A. *I believe they were expanding it* to be able to do acquisitions, yes. I think they wanted it to do everything.

Q. Okay. But the lifetime value model was not your model, right?

A. It was not my model, no, it was not.

(Pl. Dep. at 268–70) (emphasis added).

Plaintiff's contention that the Lifetime Value model would at some point in time include the type of work Plaintiff was performing is mere speculation. It certainly does not show that his work was transferred to Ligas.

Similarly, Plaintiff avers that the kind of work that Ligas was provided was the same kind of work that he had done. Defendants do not dispute this; however, it is uncontroverted that many employees in Butler's organization also performed the kind of work that Ligas and Plaintiff performed. (Pl. Dep. at 271.) Plaintiff provides no evidence that any significant, or insignificant, portion of the actual work that he performed was transferred to the position Ligas was given. Additionally, some of the work Plaintiff claims that was transferred to Ligas was not even performed by Plaintiff in his position with Butler's organization, but was instead work Plaintiff performed while Plaintiff was in other positions at Nationwide. For example, Plaintiff claims that his "auto shopping" work was transferred to Ligas; however, the evidence shows that the

19

most recent work Plaintiff performed related to "auto shopping" was when he was working for

Titan in Cleveland, and not while he was employed in Butler's organization.  (Pl. Dep. at 263).

Therefore, Plaintiff's "auto shopping" work could not have been transferred to Ligas.

      The remaining evidence upon which Plaintiff relies could, in certain situations, combine

to permit an inference of pretext.  Plaintiff argues that two ageist comments by Defendant Butler,

combined with her attempts to hire employees under 40 and terminate those over 40, are

sufficient to discredit Defendants' explanations of their actions.  "Age-related comments

referring directly to the worker may support an inference of age discrimination."  *Phelps v. Yale*

*Security, Inc.*, 986 F.2d 1020, 1025 (6th Cir. 1993).  Similarly, a court could certainly infer

discriminatory motive if a company were systematically terminating older employees and

replacing them with younger individuals.  In the case *sub judice*, however, the evidence either

completely fails to support Plaintiff's conclusions, (*e.g.*, no evidence that Butler systematically

attempted to assemble a younger workforce) or the evidence falls far short providing enough for

any reasonable jury to make an inference of an impermissible motive.

      As to the comments, Plaintiff claims that Butler said "people who have been around for a

long time need to move on," in the context of a team meeting in which the career paths for

Financial Business Advisors were being discussed.  (Pl. Dep. at 111.)  Second, Butler told

Plaintiff to "look how much you are making" during his performance review in 2010.  (Pl. Dep.

at 114.)  In addition to the comments, Plaintiff relies most heavily on the fact that Butler's

organization consisted of four Financial Business Director positions before and after Plaintiff's

termination, which, he argues, prohibits the conclusion that his position was eliminated, and

supports his claim that Butler was systematically assembling a younger workforce.  This

20

Court disagrees.

That is, it is undisputed that the organizational changes made to the P&C Finance departments in April 2009, caused Butler's organization to absorb Rothermel's group, including Dolsky. Dolsky was then terminated in the Spring of 2010, leaving open the position. Further, the uncontroverted evidence shows that Plaintiff was a shared resource between three groups and that position was *not* re-filled. Moreover, Plaintiff's assertion that eliminating his position when he was 55 years old and filling Dolsky's position with someone under 40 reflects a trend by Butler of attempting to assemble a younger workforce is simply not supported by the evidence. That is, both George White and Michael Munsch were age 64 in April of 2011, when Butler was allegedly attempting to rid her organization of older employees. More than two years later, both are still employed in the positions they held at that time. Also in the Spring of 2011, Butler eliminated the position of Charlie DeHoyos, who was under age 40. Butler's organization, which consisted of 26 individuals before it eliminated Plaintiff's position and 22 after that elimination (and other eliminations she claims were part of the RIF), consists of 16 individuals over 40 and 8 individual under 40. (Butler Dep., Ex. 9; ECF No. 28 at 243.) Finally, of the employees Plaintiff claims Butler suggested "needed to move on," three of the four are still employed by Nationwide while one voluntarily left the Company to open an insurance agency. One of the three remaining is in essentially the same position he held before, while the other two moved into assignments with peers of Butler to further develop their skills and increase the possibility of promotion.

The reduction in the number of positions in Butler's organization after the asserted RIF, her continued employment of individuals much older than Plaintiff, the high percentage of

21

workers over 40 that constitute Butler's organization, the continued employment of the individuals to whom she suggested that they "move on," and the isolated and vague nature of the comments upon which Plaintiff relies does not combine to provide anything from which a reasonable jury could infer age animus.

### 3. Conclusion - Disparate Treatment

Even when viewing the evidence in the light most favorable to Plaintiff, and drawing all justifiable inferences in his favor, he has failed to raise any genuine issue of material fact as to whether Defendants discriminated against him based on his age. Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment.

### C. Disparate Impact

The parties disagree as whether Plaintiff sufficiently alleged a disparate impact claim. Defendants contend that Plaintiff failed to sufficiently plead such a claim, pointing out that:

> He directs the Court's attention to Paragraph 16 of the Complaint, which states:
>
>> On March 11, 2010, Defendant Butler announced that a much younger employee, Michael Ligas, was hired by Defendant Nationwide through its Financial Leadership Rotation Program ("FLRP") to do financial modeling work. FLRP members are younger, recent business school graduates who do not have business finance or actuarial experience. Members acquire their experience by rotating from one Nationwide department to another.

The allegations of this Paragraph do not suggest the existence of a disparate impact claim, which turns on the existence of a neutral employment practice that has the effect of causing discrimination. *Hartsel v. Keys*, 87 F.3d 795, 801-802 (6th Cir. 1996). Plaintiff tries to tie this to disparate impact because he used the words "pattern and practice of age discrimination" in Paragraphs 32, 39, and 46 of the Complaint. But, those paragraphs clearly describe an alleged "pattern and practice" of <u>intentional discrimination</u>, by referencing "ageist remarks, systematically terminating older employees and replacing Plaintiff with Mr. Ligas . . ." Intentional

> discrimination is distinct from and not part of a disparate impact claim. *Reminder v. Roadway Express, Inc.*, 6th Cir. No. 06-3224, 215 Fed. App'x 481, 485 (Feb. 8, 2007).

(ECF No. 37 at 6) (emphasis in original).

Defendants' arguments are persuasive. However, even if Plaintiff had sufficiently alleged a disparate impact claim, it could not survive Defendants' request for summary judgment on that claim.

As Defendants correctly assert in their reply brief in support of their dispositive motion, Plaintiff has submitted no evidence of the type needed to pursue a disparate impact claim. The Sixth Circuit explains that "it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is 'responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities.'" *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005) (citing *Ward's Cove v. Antonio*, 490 U.S. 642, 656 (1989)). Plaintiff here offers no evidence of any statistical disparities caused by the FLRP.

In cases involving promotion policies, "the relevant inquiry is comparing the number of protected group members benefitting from promotions with the number seeking them; this figure is then contrasted with the corresponding ratio for the non-protected group." *Phillips v. Cohen*, 400 F.3d 388, 399 (6th Cir. 2005) (citing *Connecticut v. Teal*, 457 U.S. 440, 448 (1982)). Plaintiff has offered no evidence from which such a comparison can be make. Plaintiff has not offered any statistical evidence of any kind. Therefore, even if Plaintiff had sufficiently alleged a disparate impact claim, the evidence before the Court viewed in the light most favorable to Plaintiff fails to raise any triable issue of fact.

IV.

For the reasons set forth above, the Court **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 33) and **GRANTS** Plaintiff's Motion to File Surreply *Instanter* (ECF No. 36).  The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Opinion and Order.

**IT IS SO ORDERED.**

_____11-1-2013_____
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

24